UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 11-03440-TLM |
| DANNY ARTHUR WESTMARK and ) | |
| ALBERTA IRENE WESTMARK ) | Chapter 7 |
| ) | |
| Debtors. ) | |
| _____ ) | |
| ) | |
| JOHN KING dba SAWTOOTH ) | |
| JUDGMENT RECOVERY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. No. 12-06004-TLM |
| ) | |
| ) | |
| DAN WESTMARK, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**MEMORANDUM OF DECISION**
_____

This matter comes before the Court on Plaintiff John King's Motion for Summary Judgment, Doc. No. 18 ("Motion"), seeking to except from discharge under § 523(a)(2)(A) a judgment debt against chapter 7 debtor, Defendant Dan Westmark.[1]  Both parties are representing themselves *pro se*.  They presented oral

_____

[1] Unless otherwise indicated, statutory citations are to the Bankrptcy Code, Title 11 U.S.
(continued...)

MEMORANDUM OF DECISION - 1

argument at a hearing on the Motion on October 22, 2012, after which the Court took the matter under advisement. After considering the parties' arguments, as well as the Motion, brief in support and documentary exhibits,[2] the Court determines that the Motion must be denied.

## BACKGROUND AND FACTS[3]

Debtors Dan Westmark ("Westmark") and Alberta Westmark filed a voluntary chapter 13 bankruptcy petition on November 18, 2011. On November 22, 2011, the Westmarks moved to convert their case to chapter 7, stating that a closer review of their finances suggested they did not qualify for chapter 13 relief, and the Court granted their motion later that day. Plaintiff John King ("King")

---

[1](...continued)
Code §§ 101–1532, and Rule citations are to the Federal Rules of Bankruptcy Procedure 1001–9037.

[2] On October 18, 2012, only four days before the hearing, Defendant submitted the affidavits of himself and Jack Bunt, Doc. No. 23 and 24, in opposition to the Plaintiff's Motion for Summary Judgment. Additionally, Defendant did not submit a responsive brief or statement of disputed and undisputed facts as required by LBR 7056.1(b)(2).

As Plaintiff correctly pointed out at the hearing, LBR 7056.1(b)(2) requires affidavits to be filed at least fourteen days before the hearing. Plaintiff requested the Court exclude the untimely filed affidavits from its consideration of the Motion. The Court denied that request at the hearing, but after further reflection has decided to grant it. Even though Defendant is *pro se*, that does not excuse compliance with the rules. *See*, *e.g.*, *Arnold v. Gill (In re Arnold)*, 252 B.R. 778, 781 n.2 (9th Cir. BAP 2000) ("*Pro se* appellants are accorded some leeway, but cannot ignore the Code and Rules, and the rules of this court.").

[3] Although Plaintiff submitted a Statement of Asserted Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment, Doc. No. 21, it provided no detail beyond confirming the existence of the state court judgment and the identity of the parties. The following facts have been derived from this Court's dockets in the adversary proceeding and underlying bankruptcy case, including the portions of the state court docket that have been filed in this adversary proceeding.

MEMORANDUM OF DECISION - 2

filed this adversary proceeding on January 25, 2012, seeking a determination that a judgment against Westmark issued by the Fourth District Court of Idaho in Ada County (the "State Court") in Case No. CV-OC-08-13457 ("State Court Case") should be excepted from discharge.

The judgment was assigned to King by Murray Stookey ("Stookey"), the plaintiff in the State Court Case. Stookey's complaint in the State Court Case alleged numerous causes of action against Westmark and four other defendants: Russ Vorwerk ("Vorwerk"), VW3000 LLC, Westmark Commercial Finance Corporation[4] and Business Transaction Support Corporation ("BTS"). Westmark and Vorwerk were the only members of VW3000 LLC, and BTS was wholly-owned by Vorwerk. The State Court dismissed all of the claims except the breach of contract claims, fraud claims relating to two contracts, and the alter ego allegations tied to the fraud claims. After a trial on June 21 and 22, 2010, the State Court entered its Findings of Fact, Conclusions of Law and Judgment ("Findings and Conclusions") on September 28, 2010.

From the State Court's findings, it is clear the litigation arose from investments Stookey made, and a series of three different agreements Stookey entered with different parties in an attempt to recoup the principal and promised

---

[4] Westmark Commercial Finance Corporation was named in Stookey's complaint, but the State Court entered no factual findings about this corporation.

MEMORANDUM OF DECISION - 3

returns on those investments. The first agreement (the "2002 Settlement") was between Stookey and Vorwerk (through BTS), and unconditionally promised payment of Stookey's original $100,000 investment and the promised returns on that investment from the proceeds of foreign litigation. The second agreement (the "2003 Settlement and Investment"), which was signed by Vorwerk,[5] promised Stookey a new way of recouping his investment through "a complex money transfer" if he invested another $60,600. Finally, the third agreement (the "2005 Settlement") promised to pay Stookey all of the outstanding principal and previously promised profits, including those from the 2003 Settlement and Investment, from the proceeds of an "investment in part of a multimillion dollar investment in used rail and secured by $1,000,000,000 in Mexican real estate."

Vorwerk signed the 2005 Settlement on behalf of BTS and Westmark signed it as manager of VW3000 LLC. The State Court noted that "Westmark claims that he only acknowledged the agreement, but was not [a] signator committing VW3000 LLC," and never entered findings contravening Westmark's allegation. However, the State Court's conclusions imply that VW3000 LLC was bound by the 2005 Settlement, stating that BTS and VW3000 LLC "committed fraud when *they entered into* the agreement with Plaintiff." (Emphasis added).

---

[5] The State Court's findings do not specify whether Vorwerk was signing the 2003 Settlement and Investment individually or in a representative capacity for either BTS or VW3000 LLC.

MEMORANDUM OF DECISION - 4

The State Court concluded that unspecified "Defendants" breached three contracts: the 2002 Settlement, the 2003 Settlement and Investment, and the 2005 Settlement, by completely failing to perform on any of them. Additionally, the State Court concluded BTS and VW3000 LLC committed fraud by making "knowing false material statements of facts" in the 2005 Settlement, which they intended Stookey to rely on and which Stookey did justifiably rely on.[6]

The State Court also determined that VW3000 LLC was the alter ego of Westmark and Vorwerk, and so held both men personally liable for the breach of the 2005 Settlement and for the fraud committed by VW3000 LLC. Vorwerk was also held personally liable for the acts of his alter ego, BTS. Finally, the State Court concluded that Vorwerk and Westmark were personally liable for "any acts or omission of their own which caused a breach of contract or fraud where they were not acting for VW3000 or Business Transaction Support Corporation," although its factual findings do not note any instances where either Vorwerk or Westmark specifically acted outside their representative capacities.

The State Court's Findings and Conclusions determined monetary damages for each of the contract breaches, but only awarded Stookey $887,800 for the breach of contract claim relating to the 2005 Settlement because the amounts were

---

[6] The State Court did not specifically identify which representations were false in its Findings and Conclusions. However, the State Court did find that unspecified Defendants failed to explain about the investment in the used rail or the security in Mexican real estate, seemingly implying those statements were false.

MEMORANDUM OF DECISION - 5

duplicative. The State Court did not attribute any damages to the fraud claim. A separate judgment entered on April 26, 2011 granted Stookey a $1,469,964.40 judgment against the defendants, including the damages, pre-judgment interest, and attorney's fees and costs. An Acknowledgment of Assignment of Judgment was filed in the State Court Case on November 8, 2011, whereby Stookey authorized King to recover on the judgment.

After Westmark and his wife filed for bankruptcy, King filed this adversary proceeding seeking to hold the judgment from the State Court Case non-dischargeable. Although King's complaint did not specify under which provisions of the Code he was requesting non-dischargeability, his Motion for Summary Judgment clarified that he is arguing that the State Court's Findings and Conclusions, which established Westmark is liable for fraud, are preclusive for purposes of § 523(a)(2)(A).

**DISCUSSION AND DISPOSITION**

    **A.**    **Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure, made applicable in bankruptcy adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, governs summary judgment motions. That rule provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

MEMORANDUM OF DECISION - 6

matter of law." Fed. R. Civ. P. 56(a). Once the moving party meets its initial burden, then the opponent must provide evidence establishing a genuine issue of material fact for trial. *Poole v. Davis* (*In re Davis*), 2012 WL 4831494, *2 (Bankr. D. Idaho 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). Summary judgment may be granted when issue preclusion prevents the parties from relitigating material issues. *Id.*

### B.     Issue Preclusion

Collateral estoppel, now commonly referred to as issue preclusion, applies in non-dischargeability proceedings under § 523(a). *Harmon v. Kobrin* (*In re Harmon*), 250 F.3d 1240, 1245 (9th Cir. 2001). "Under the Full Faith and Credit Act, 28 U.S.C. § 1738, the preclusive effect of a state court judgment in a subsequent bankruptcy proceeding is determined by the preclusion law of the state in which the judgment was issued." *Id.*

> Under Idaho law, issue preclusion may be applied if five factors are met:
>
> (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation.

*Bach v. Bagley*, 148 Idaho 784, 795, 229 P.3d 1146, 1157 (2010).

Westmark was a party to the State Court Case, the State Court issued a final

MEMORANDUM OF DECISION - 7

judgment, and Westmark has not asserted that he did not have a full and fair opportunity to litigate that case. Thus only two elements of issue preclusion are at issue: whether the issue decided in the State Court Case was identical to that now presented against Westmark under § 523(a)(2)(A), and whether the issue sought to be precluded was actually decided by the State Court. In other words, do the State Court's factual findings, which underlie that court's conclusion that Westmark is liable for the fraud VW3000 LLC committed, satisfy the elements for non-dischargeability under § 523(a)(2)(A)?

### C.    Section 523(a)(2)(A) Non-Dischargeability

Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." In order to establish a debt is non-dischargeable under that section, a creditor must establish five elements by a preponderance of the evidence:

> (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

*Davis*, 2012 WL 4831494 at *3 (citing *Turtle Rock Meadows Homeowners Ass'n*

MEMORANDUM OF DECISION - 8

*v. Slyman* (*In re Slyman*)*,* 234 F.3d 1081,1085 (9th Cir.2000)).

Generally, fraud under § 523(a)(2)(A) must be "actual or positive fraud and not fraud implied in law," and thus must have been actually committed by the debtor. *Tsurukawa v. Nikon Precision, Inc.* (*In re Tsurukawa*), 258 B.R. 192, 196 (9th Cir. BAP 2001) ("*Tsurukawa I*") (citing *Neal v. Clark*, 95 U.S. 704 (1877)). Thus, the analysis must focus on whether the State Court's Findings and Conclusions establish the judgment debt is non-dischargeable as to Westmark under § 523(a)(2)(A). If not, then the analysis must turn to whether the State Court's conclusion that VW3000 LLC committed fraud can be imputed against Westmark in order to satisfy § 523(a)(2)(A).

### 1. Westmark's Conduct

The State Court's Findings and Conclusions do not sufficiently address Westmark's conduct to allow this Court to establish whether the elements of § 523(a)(2)(A) have been met. The State Court did not directly identify which representations were false or the circumstances under which those representations were made. Without specific factual findings, this Court cannot ascertain that Westmark himself made false representations, let alone that he knew they were untrue or intended to deceive Stookey.[7] Further, in spite of the State Court's

---

[7] The State Court did make specific findings that "Defendants" knew the truth of the representations and intended for Stookey to rely on them. This Court cannot interpret those statements to mean that all of the defendants in the State Court Case had such knowledge or
(continued...)

MEMORANDUM OF DECISION - 9

specific finding that Stookey justifiably relied on the representations, this Court cannot determine that Stookey relied, justifiably or otherwise, on Westmark's false representations because it is unclear who made the representations.

While the State Court concluded Westmark was "personally liable for any acts or omission of [his] own . . . where [he] was not acting for VW3000," it made no specific findings about any such acts or omissions by Westmark outside his representative capacity. Indeed, the State Court made only one finding about Westmark's conduct: Westmark signed the 2005 Settlement as manager of VW3000 LLC.[8] But that alone does not establish Westmark made representations, knew they were false, or intended to deceive Stookey. To hold otherwise would require a leap in logic, ignoring other possible circumstances. For instance, the State Court might have concluded VW3000 LLC committed fraud due to Vorwerk's conduct as a member of that limited liability company. In such circumstances, Westmark might not have known about or participated in the fraud

---

[7](...continued) intent. The State Court often used the word "Defendants" when it clearly did not mean *all* of the defendants. For instance, the State Court concluded "Defendants" breached the 2002 Settlement, but there were no factual findings that Westmark or VW3000 LLC were parties to that contract. In another instance, the State Court said "true details of the underlying promises were within the knowledge of/or available to both Defendants," but never specified which two of the five named defendants it was referencing

[8] That the State Court recognized that Westmark claimed he was only "acknowledging" the agreement without intent to bind VW3000 LLC to it and never entered a finding countering that claim raises further questions about the sufficiency of the factual findings to establish Westmark made the representations.

MEMORANDUM OF DECISION - 10

at all beyond his membership in the company that perpetrated it.

### 2. Imputing VW3000 LLC's Fraud

King also argues Westmark is personally liable as VW3000 LLC's alter ego. It is true the State Court found VW3000 LLC committed fraud and held Westmark liable based on an alter-ego theory. However, it does not necessarily follow that such a finding may be granted issue preclusive effect in the context of individual liability under § 523(a)(2)(A).

As the Ninth Circuit Bankruptcy Appellate Panel held in *Tobin v. Sans Souci Ltd. P'ship.* (*In re Tobin*), 258 B.R. 199 (9th Cir. BAP 2001), if a state court judgment does not provide evidence that the debtor "knowingly participated in" the fraud or made the fraudulent representations, such judgment is not entitled to issue preclusive effect. *Id.* at 205–06. In *Tobin*, the debtor was a shareholder in and president of a real estate development corporation formed by his father. *Id.* at 201. The state court did not make any findings as to the debtor's individual conduct, but held him liable as the alter ego of the corporation for fraudulent misrepresentations made by the corporation to a lender. *Id.* The panel reversed the bankruptcy court and held the bankruptcy court's application of issue preclusion to a state court's alter ego findings was an error. A bankruptcy court cannot impute a corporation's fraud to its shareholder without a determination of

MEMORANDUM OF DECISION - 11

the individual's knowing participation in the fraud.[9]

Here, the situation is very similar to *Tobin*. As discussed above, the State Court did not make any findings that Westmark made fraudulent representations or otherwise personally participated in VW3000 LLC's fraud. It would be error here, as it was in *Tobin*, to grant an exception from discharge under § 523(a)(2)(A) based on the State Court's conclusion that VW3000 LLC was the alter ego of Westmark. Based on *Tobin*, this Court cannot apply issue preclusion to impute VW3000 LLC's fraud to Westmark without more specific findings.

### 3. Damages

Finally, even if the Findings and Conclusions established the other elements of § 523(a)(2)(A), the damages awarded by the State Court were for "breach of contract" regarding the 2005 Settlement, rather than for the fraud cause of action. Because the State Court did not fix an amount of damages for the fraud, the Court cannot apply issue preclusion to the damages element, any more than it can to any of the other elements of the § 523(a)(2)(A) claim.

## CONCLUSION

Although no facts were disputed for the purposes of this motion, Plaintiff failed to establish the elements required for an exception to discharge under

---

[9] The Bankruptcy Appellate Panel later clarified that personal participation was not required in cases falling under an agency exception, limiting the reach of the *Tobin* holding to the corporate alter ego context, but not overturning the decision. *Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa)*, 287 B.R. 515, 527 (9th Cir. BAP 2002) ("*Tsurukawa II*").

§ 523(a)(2)(A), and so has not established he is entitled to judgment as a matter of law. The Motion for Summary Judgment will be denied. The Court will enter an order accordingly.

DATED: November 9, 2012



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 13